UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ABDIRAHMAN ABDIRZAK HERSI,

    Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; ROBERT ROES 1-3, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

    Defendants.

Case No. 16cv3714 (JNE/TNL)
ORDER

### I.    INTRODUCTION

Plaintiff Abdirahman Abdirzak Hersi alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his subsequent arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; Robert Roes 1-3, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Hersi's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 19. St. Paul moves on behalf of the City of St. Paul and Robert Roes 1-3 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 25.

The investigation at the core of Hersi's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case"). Hersi alleges that Weyker fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of Hersi's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments. Hersi is represented by the same attorneys as the plaintiff in that case, and their attorneys filed consolidated opposition papers to the Defendants' motions. *See* Osman Pls.' Opp. to St. Paul Mot., Dkt. No. 30; Osman Pls.' Opp. to DOJ Mot. to Dismiss ("Osman DOJ Opp."), Dkt. No. 36.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the March 6, 2017 Order Permitting the Osman Plaintiffs to Amend Complaints. Dkt. No. 40. Pursuant to that order, Hersi filed a First Amended Complaint [Dkt. No. 41] ("FAC"), which is thus the operative complaint subject to these Rule 12 motions.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III. ALLEGATIONS

Most of the salient allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Hersi's First Amended Complaint and other facts gleaned from the Tennessee Case record.

Hersi was arrested on November 8, 2010, after being indicted by a grand jury in the Tennessee Case. FAC ¶ 9-10. He was imprisoned as a pretrial detainee. FAC ¶ 65.

The First Superseding Indictment filed on November 3, 2010, indicted him in five counts.[2] *See United States v. Hersi*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010) ("FSI"). Two counts alleged participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). These counts alleged that on April 25, 2009, as some co-defendants began to plan a trip to Nashville, Tennessee "for the purpose of transporting Jane Doe Two to Nashville to engage in commercial sex acts," FSI ¶ 37, those defendants "transported Jane Doe Two to a location where" Hersi "was present," where she was "provided to" him "for the purpose of sex," and that Hersi "did engage in sex acts with Jane Doe Two," FSI ¶ 40. The indictment alleged that the next day, Hersi and some of the co-defendants "offer[ed] Jane Doe Two" to persons "for the purpose of commercial sex acts" to "attempt to raise money for the trip

---

[2] Hersi's complaint does not refer to the First Superseding Indictment, but counsel has acknowledged it. *See* Dkt. No. 46. Because the indictment is a matter of public record, the Court may take judicial notice of it and other documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

3

to Nashville . . . ." FSI ¶¶ 43-44. Counts 12 and 13 alleged that Hersi recruited and attempted to recruit Jane Doe Two, a minor, to engage in commercial sex. *See* FSI ¶¶ 97-98.

Hersi has "never met Jane Doe Two, and any allegations to the contrary are fabricated." FAC ¶ 15. Prior to his indictment, "Weyker and others were in possession of information that Hersi had no connection whatsoever to Jane Doe Two." FAC ¶ 16. Hersi "certainly never engaged in sexual intercourse with Jane Doe Two," "certainly never paid a fee nor provided anything of value in exchange for engaging in sex acts" with her, and "certainly never arranged for Jane Doe Two to have sex with anyone in exchange for a fee," and "any allegations to the contrary were fabricated." FAC ¶¶ 18-20. Hersi was not involved in any way with a trip that Jane Doe Two and others took to Nashville in April 2009 in which the government alleged that Jane Doe Two engaged in sex for money. *See* FAC ¶¶ 21, 31. Weyker manipulated Jane Doe Two "into fabricating evidence about Hersi, whom she had never met, and others." FAC ¶ 45.

In addition, the fifth charge against Hersi in the First Superseding Indictment, Count 18, charged him with conspiring to commit credit card fraud in violation of 18 U.S.C. § 1029(a). FSI ¶ 117.

In Spring 2012, a group of the co-defendants, including Hersi, were scheduled to stand trial. *See* FAC ¶¶ 49; *United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. 2012). "A jury was empaneled as to Hersi, but a mistrial was declared as to Hersi's case[,] and the jury did not return a verdict against Hersi." FAC ¶ 50; *see also Adan*, 913 F. Supp. 2d at 560 ("[T]he [district court] concluded that the Government's proof of these Defendants' ages," including Hersi's, "at the time of their offenses was insufficient to establish the Court's jurisdiction . . ." and "granted the Government's motion for a mistrial without prejudice" as to those defendants.). In June 2012, the district court reconsidered its order dismissing without prejudice the case

against Hersi and found that because in the two months since the court had dismissed with prejudice, the government had failed to take steps to tender certification as required under the Juvenile Delinquency Act, it was appropriate to reconsider and dismiss with prejudice. *United States v. Hersi*, No. 3:10cr260, Dkt. No. 2554, at 5 (M.D. Tenn. June 7, 2012).

Hersi was released from custody on July 11, 2012. FAC ¶ 53.

The jury reached verdicts for nine defendants in the April 2012 trial. The jury acquitted six defendants on all charges and convicted three others on some charges. In December 2012, the district court granted the three convicted defendants' Federal Rule of Criminal Procedure 29 motions for acquittal, on the basis of a variance. *Adan*, 913 F. Supp. 2d at 560, 579; *see also* FAC ¶ 52. In March 2016, the Sixth Circuit Court of Appeals issued an order affirming the district court's Rule 29 order. *See* FAC ¶ 54; *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016). The federal charges against all remaining defendants in the Tennessee Case were then dismissed. FAC ¶ 63.

Like Osman, Hersi alleges that the charges of a widespread sex-trafficking conspiracy were baseless and that Weyker fabricated "[t]he overwhelming majority of the critical evidence supporting the indictments in this alleged conspiracy," FAC ¶¶ 34-35; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, FAC ¶¶ 14, 43-45; that Weyker was motivated to falsify evidence by a desire for glory, FAC ¶ 1; that Weyker "worked with almost no supervision by her employer and principal" the St. Paul Police Department, FAC ¶ 47; and that indications of Weyker's fabrication included her rough notes, questions surrounding Jane Doe Two's age and her trip to Nashville in April 2009, the acquittals of nine co-defendants who went to trial, and remarks about Weyker by the district and appellate courts in the Tennessee Case, FAC ¶¶ 12-13, 25, 27, 39-40, 51-52, 54-56, 58.

5

## IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments on these consolidated motions is included in the Osman Opinion at pages 8-10.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Hersi's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict [his] liberty." FAC ¶ 1. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Hersi's. *Id.* at 920 n.8. Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment, but if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out." *Id.* Hersi's claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion).[3]

Under the Fourth Amendment analysis, the Court must decide whether Hersi plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting

---

[3] Unlike many of the other plaintiffs, Hersi does not allege that he was held in custody, rather than released on bond, because of a presumption arising from the sex-trafficking-related charges. *Compare with, e.g.*, FAC ¶¶ 26-27, *Jama v. Weyker, et al.*, No. 16cv1230, Dkt. No. 61.

6

and detaining him without arguable probable cause, based on fabricated evidence.[4]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention

---

[4] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Hersi's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

7

based on allegedly false and incomplete information in a probable cause statement).[5] "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (quoting *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

### a. Analysis of Hersi's Claim Under the Fourth Amendment

In considering whether Hersi plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Hersi's core allegations closely track Osman's. Like Osman, he alleges that a jury acquitted six co-defendants, and the court acquitted[6] another three after trial. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which

---

[5] An arresting officer who had "a mistaken but objectively reasonable belief" that probable cause existed would be entitled to qualified immunity. *McCabe v. Parker*, 608 F.3d 1068, 1078 (8th Cir. 2010). Hersi alleges, however, that there was no mistaken belief—rather, Weyker knowingly fabricated the material evidence. The "arguable probable cause" standard arguably would not apply if Weyker intentionally misled, but Hersi does not press the point, *see* Osman DOJ Opp. 34-35, and it is not dispositive here.

[6] The Court uses the word "acquittal" for consistency with the Tennessee Case opinions and the pleadings but has some reservations about it. *See* Osman Op. 23-25. For instance, Hersi alleges that he was "acquitted," FAC ¶ 50, but it appears that the district court found it did not have jurisdiction and then dismissed with prejudice on procedural grounds because the government was not diligent in seeking certification. *See Hersi*, No. 3:10cr260, Dkt. No. 2554, at 5 (M.D. Tenn. June 7, 2012).

both Osman and Hersi cite. *See* Osman Op. 25-33. In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim over the *Iqbal* plausibility line. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Hersi's case, however, is different.

Weyker and Bandemer argue that even if Hersi plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in a non-trafficking-related charge defeats his Fourth Amendment claim. They argue that Hersi fails to plausibly allege that there was not probable cause to arrest him on the other crime with which he was charged. *See* DOJ Br. 65-68. Hersi counters that it is the Defendants' burden to establish their affirmative defense of arguable probable cause and that "too many fact issues remain at this stage for the Court to rule on the effects that other charges may have had on the Osman Plaintiffs' unlawful arrests." *See* Osman DOJ Opp. 34. Moreover, he argues there was no arguable probable cause to arrest him in 2010 "without the fabricated evidence," as shown by the fact that the government ultimately dismissed all charges against all remaining co-defendants. *See id.* at 35.

Hersi's complaint does not acknowledge that he was charged in Count 18 with a crime unconnected to any alleged sex-trafficking. He fails to plausibly allege—or even conclusorily allege—that there was no probable cause to indict and arrest him in November 2010 on that count. He alleges no specific facts regarding fabrication of evidence about the alleged credit-card-fraud scheme. And although Hersi is not charged with any specific acts in the credit-card-

9

fraud conspiracy, the grand jury's indictment of him on that charge "conclusively determines the existence of probable cause" on that count, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any allegations that the indictment on Count 18 was tainted by fabrication of evidence. The Court further notes that one of his co-defendants pleaded guilty to Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

Hersi's more general allegations cannot overcome the hurdle posed by the Count 18 indictment. He alleges that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict [his] liberty." FAC ¶ 1; *see also* FAC ¶ 64 ("Hersi never would have been indicted or detained had Weyker not fabricated evidence, coerced witnesses, and misled federal authorities."). But he does not allege any facts to lend plausibility to this conclusory statement. His allegation that he was "acquitted" in the Tennessee Case, FAC ¶ 50, is an oversimplification of the court's actual ruling that it lacked jurisdiction because of inadequate proof of Hersi's age and that the government then was not diligent in pursuing the certification required under the Juvenile Delinquency Act to establish jurisdiction. *See Hersi*, No. 3:10cr260, Dkt. No. 2554, at 5 (M.D. Tenn. June 7, 2012). And his allegation that the government eventually dropped all charges is not sufficient because in a criminal case as lengthy and complicated as the Tennessee Case, it is not reasonable to assume from that eventual dismissal—after an appeals court affirmed the grant of Rule 29 motions by three co-defendants on the basis of a variance—that there was never probable cause to support *any* of the charges.

Therefore, Hersi's complaint must fail. Even if there were no probable cause to arrest him based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146,

153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). Hersi "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888; *see also Keil*, 661 F.3d at 986.

Defendant Weyker is entitled to qualified immunity. Hersi has failed to plausibly allege a constitutional violation.

### b. Supervisory Liability

Hersi sues Bandemer and Robert Roes 1-3 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to but not direct participants in Weyker's alleged violations.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

11

First, given the Court's conclusion that Hersi has not adequately alleged a constitutional violation by Weyker, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, Hersi's complaint, which is practically identical to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, he alleges that Bandemer and the Robert Roes had supervisory responsibility over Weyker, *see, e.g.*, FAC ¶¶ 6, 8; that the investigation was very important to the St. Paul Police Department vice unit, *id.* ¶ 36; and that "[b]y February 12, 2012, at the latest, Bandemer and the other supervisory Defendants and the City had actual notice of the falsity of the allegations put forth by Weyker," based on district court orders including the memorandum-order at Dkt. No. 1392 and because of news coverage, *id.* ¶¶ 48, 57-58. Like Osman, Hersi cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. FAC ¶ 58.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Hersi does not allege any other similar acts by Weyker before her Tennessee Case investigation that could show a pattern about which Bandemer or the Robert Roes personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and Robert Roes 1-3 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Hersi sues St. Paul as well as Bandemer and the Robert Roes in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id*.

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Hersi alleges that Weyker acted alone, with little supervision. *See, e.g.*, FAC ¶ 47. He does not allege facts to support conclusory allegations that Weyker or other St. Paul Police

Department employees fabricated evidence in other investigations. For the same reasons given in the Osman Opinion, *see* Osman Op. 41-42, Hersi's municipal liability allegations also fail.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because Hersi's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010). The Court will not grant leave to amend based on a request made in passing at the end of a brief without complying with local rules or in any way indicating what changes might be made. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 19] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 25] is GRANTED.

3. Plaintiff Abdirahman Abdirzak Hersi's First Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017                                               s/ Joan N. Ericksen
                                                                                        JOAN N. ERICKSEN
                                                                                        United States District Judge